IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2001

### STATE OF TENNESSEE v. LAVARNE MADISON

**Direct Appeal from the Criminal Court for Shelby County
Nos. 99-13848, 49     Carolyn Wade Blackett, Judge**

---

### No. W2000-01539-CCA-R3-CD  - Filed August 27, 2001

---

The defendant was charged in a two-count indictment with one count of the unlawful possession of more than .5 grams of cocaine with the intent to sell, and one count of the unlawful possession of more than 26 grams of cocaine with the intent to deliver.  A separate indictment returned the same day charged one count of the unlawful possession of marijuana.  Pursuant to a negotiated plea agreement, he subsequently pled guilty to two misdemeanor drug possession offenses in connection with the charges, and was sentenced to concurrent sentences of 11 months, 29 days.  The trial court refused his request for judicial diversion, but granted him probation, with the condition that he spend 90 days in a halfway house.  In a  timely filed appeal to this court, the defendant raises two issues: (1) whether the trial court erred in denying his request for judicial diversion; and (2) whether the trial court abused its discretion in sentencing him to three months in the halfway house as a condition of probation.  Based upon a careful review, we affirm the judgment of the trial court.  However, we remand to the trial court for entry of a corrected judgment form to reflect the disposition of all charges against the defendant.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgment

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Leslie I. Ballin and Gray W. Bartlett, Memphis, Tennessee, for the appellant, Lavarne Madison.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; William L. Gibbons, District Attorney General; and Janet Shipman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

As an initial matter, we must address the fact that the transcript of the defendant's guilty plea hearing was not included in the record before this court.  In order for this court to conduct an

effective review of sentencing in a case involving a conviction pursuant to a guilty plea, a transcript of the guilty plea hearing is necessary. See State v. Thomas Leon Lewis, II, No. W2000-01740-CCA-R3-CD, 2001 WL 490740, at *1 (Tenn. Crim. App. May 9, 2001) (citing State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999)). The transcript of the guilty plea hearing allows this court to ascertain the facts and circumstances surrounding the offenses. Id. The only recitation of the facts surrounding the offenses in this case is contained in the presentence report, in the report of the officer who made the arrest. "In the absence of a transcript of a guilty plea, this court must generally conclude that the sentence imposed by the trial court was correct." Id. (citing Keen, 996 S.W.2d at 844). We will review the defendant's issues, but in so doing will be limited to the brief recitation of the facts contained in the presentence report, and alluded to in the defendant's sentencing hearing.

## FACTS

According to the presentence report, on February 11, 1999, Memphis police officers, responding to a complaint of drugs being sold from the parking lot of a Burger King, discovered the defendant, Lavarne Madison, sitting with three other men in the defendant's 1999 Nissan Maxima parked in the restaurant's parking lot. Detective Gardner of the Memphis Police Department walked by the car and saw smoke coming from the driver's window and the left rear window. Shortly thereafter, the defendant pulled out of the parking lot, driving at an excessive speed and in a reckless manner. The car was stopped, and the defendant was asked to step outside. When he did so, Detective Gardner smelled marijuana. He found a clear plastic bag containing 6.3 grams of marijuana and a loaded .38 caliber gun inside the car. Inside a jacket in the trunk of the car, Detective Gardner found a plastic bag containing ten rocks of crack cocaine, for a total weight of 2.5 grams. Another bag containing eight rocks of crack cocaine, weighing 1.6 grams, was found during an inventory search of the car. The defendant admitted that the crack cocaine, marijuana, and gun belonged to him.

The defendant was subsequently indicted on one count of possession of more than .5 grams of cocaine with the intent to sell, one count of possession of more than 26 grams of cocaine with the intent to deliver, and possession of marijuana. On April 13, 2000, pursuant to a negotiated plea agreement, the defendant pled guilty to two misdemeanor charges of possession of marijuana and possession of cocaine.

The trial court held a sentencing hearing on June 15, 2000, to consider the defendant's request for judicial diversion, and to set sentencing. The twenty-four-year-old defendant testified that he had a part-time job as a cook in a Memphis City School cafeteria,[1] and lived with his girlfriend and their two small children. He admitted that he had no job during the summer months when school was out and said that he spent a good deal of the time "babysitting" his two children, because his girlfriend worked two jobs. He said that on the day that he was arrested he had been

---

[1] A letter from the defendant's supervisor, identified by the defendant and accepted as an evidentiary exhibit by the trial court, described the defendant as a trustworthy employee who always showed up on time and who did "an outstanding job."

sitting with three friends in his car on the Burger King parking lot smoking marijuana. He acknowledged that the crack cocaine and loaded handgun in the car had been his, explaining that he had had the cocaine because he had been "trying to get some easy money," and that he had carried the loaded handgun for "protection." He said that this was his first arrest in four years, and that he believed that he could "go straight."

The defendant admitted that he had dropped out of school in the eighth grade, and explained his lengthy juvenile criminal record as the result of his desire to "live a fast life" and the failure of his mother to adequately supervise him. He claimed that he was not blaming his mother, but merely explaining how he happened to be "loose" on the streets. He acknowledged his father's presence and support in the courtroom, but faulted him for his failure to be involved in his life when he was a child.

The defendant's girlfriend testified that she and the defendant had lived together for about five years, and had two children together. She said that she worked at Federal Express and as a housekeeper at the Memphis City Schools, and had "no problem" with working two jobs to support her family. She believed that the defendant would be able to stay out of trouble and thought that it would be important for him to be able to earn an eventual dismissal of the charges against him, so that he would have the possibility of obtaining a better job in the future.

At the conclusion of the hearing, the trial court denied the defendant's request for judicial diversion, sentencing him to two concurrent sentences of 11 months, 29 days. The trial court suspended the sentences, placing the defendant on supervised probation, and ordering that he serve ninety days in a halfway house, Project W.I.T. ("Whatever It Takes"), as a condition of probation. The defendant was also fined $750 for each offense. Thereafter, he filed a timely appeal to this court.

## ANALYSIS

### I. Denial of Judicial Diversion

The defendant first contends that the trial court abused its discretion in denying his request for judicial diversion. He asserts that the court failed to properly consider and weigh all of the appropriate factors in its denial of his request for diversion, focusing on the nature and circumstances of his crime and his criminal history, to the exclusion of other important factors, such as his social and work history. As support for being granted diversion, the defendant points to evidence that six years had elapsed from the time of his last conviction as a juvenile until his arrest for the instant offenses, his excellent work history, and his forthrightness in acknowledging ownership of the drugs and the gun. The State argues that the trial court considered and weighed the appropriate factors in denying the defendant's request for judicial diversion, and that there is substantial evidence in the record in support of the trial court's decision.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Tennessee Code Annotated Section 40-35-313 provides that, following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2000). A qualified defendant is one who pleads guilty or is found guilty of a misdemeanor or Class C, D, or E felony; has not been previously convicted of a felony or a Class A misdemeanor; and who is not seeking deferral for a sexual offense or a Class A or B felony. Tenn. Code Ann. § 40-35-313(a)(1)(B) (Supp. 2000). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Tenn. Code Ann. § 40-35-313(a)(2) and (b) (Supp. 2000).

The decision to grant or deny a qualified defendant judicial diversion, however, lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court considers (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial, and how those factors outweigh other factors in favor of diversion. Id.

The defendant argues that the trial court abused its discretion in denying his request for judicial diversion by focusing "almost exclusively" on his juvenile criminal record and the nature of his crimes. We disagree. The transcript of the sentencing hearing reflects that the trial court based its denial of the defendant's request for judicial diversion not only on his lengthy juvenile criminal history and the nature of the crimes, but also on his social and work history, his lack of

genuine remorse, his failure to express a sincere intention to reform his life, and his tendency to blame others for his actions. The trial court stated, in pertinent part:

> Personally, based on the testimony, this court believes that you are not the greatest candidate for judicial diversion. And the reasons why are because here you've been before this court as a 23 year old, you have two children, you're living with a woman that is not your wife. She's working two jobs. You're working a part-time job. It's not equitable at all. And then that's the first problem that I have.
>
> The second problem is that here you are 23 years old and the only thing that you can find to do with your spare time instead of spending that time with your children or going out finding a part-time job so you can help with the children at home, you're in a parking lot of a Burger King smoking dope.
>
> How you can afford to have a 1999 Maxima, how you can afford to have all this dope in your car, I don't understand. There's a pattern here. This is not just a one-time incident that you just happened to get caught. I think this is a practice of yours that you do all the time. I think that parking lot is somewhere that you go, and you frequent quite a bit. I think that you smoke marijuana quite a bit. I think that you also have rocks of crack because you're trying to make some extra money. And I think that the only reason why you're in here today is because you got caught.
>
> It wasn't because you were going to quit or you had started to try to change your life – and I didn't hear anything about that up here. About you reforming your life, and you're going to get your GED. You dropped out of the 8th or 9th grade. You don't even have a high school education. And I would think that you would not want to spend the rest of your life being a cook.
>
> . . . .
>
> And now you have two kids. And what really disgusts me is that you have two kids; and if they were to go to show and tell at their preschool next year, they would get to show and tell you as a drug dealer and as a drug addict. Basically, using drugs. That's all you do.
>
> So it's not really a problem so much as for the court, is that I don't think you're looking at what you're doing to yourself. This is the kind of lifestyle that you're setting up. And you can't blame your

mother. You can't blame your father. At this point, you need to start blaming yourself. Nobody is putting you out there on that parking lot but yourself.

Our review reveals that the trial court considered and balanced the appropriate factors in its consideration of the defendant's request for judicial diversion, and that substantial evidence existed in the record in support of the trial court's denial of diversion. Although this was the defendant's first offense as an adult, he has a fairly lengthy criminal record as a juvenile, including the following: an arrest at the age of fourteen for possession of cocaine with the intent to sell, for which he was placed on supervised probation; an arrest for violation of probation when he was fifteen; an arrest at sixteen for possession of cocaine; and two arrests at seventeen for possession of cocaine with the intent to sell. Thus, the defendant's arrest in the case at bar was by no means the defendant's first drug-related offense. The record reveals that the trial court appropriately gave great weight to the defendant's prior criminal history and the nature and circumstances of his offense in denying his request for judicial diversion, but also appropriately considered other factors. We, therefore, find no abuse of discretion by the trial court in this matter.

## II. Halfway House as Condition of Probation

The defendant next contends that the trial court abused its discretion in requiring that he serve three months in a halfway house as a condition of his probation. Pointing out that he is a first-time adult offender who pled guilty to two misdemeanor offenses, the defendant argues that the trial court's requirement that he spend ninety consecutive days in the halfway house is too harsh, and that he should have instead been granted judicial diversion, or, in the alternative, full probation, with no period of confinement in the halfway house. The State points out that the defendant has a lengthy juvenile record involving drug use and drug sales, that he has been placed on full probation in the past, and that he has been unsuccessful in complying with the terms of his past probation. The State therefore argues that, based on the defendant's history, the trial court did not abuse its discretion in ordering a period in the halfway house as a condition of probation. We agree with the State.

The trial court is granted broad discretion in its imposition of conditions of probation. See Tenn. Code Ann. § 40-35-303(d) (1997); Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). The probation statute provides:

> Whenever a court sentences an offender to supervised probation, the court shall specify the terms of the supervision and may require the offender to comply with certain conditions which may include, but are not limited to:
>
> (1) Meet the offender's family responsibilities;
>
> (2) Devote the offender to a specific employment or occupation;

> (3)     Perform without compensation services in the community for charitable or governmental agencies;
>
> (4)     Undergo available medical or psychiatric treatment, and enter and remain in a specified institution whenever required for that purpose by voluntary self-admission to the institution pursuant to § 33-6-201;
>
> (5)     Pursue a prescribed secular course of study or vocational training;
>
> (6)     Refrain from possessing a firearm or other dangerous weapon;
>
> (7)     Remain within prescribed geographical boundaries and notify the court or the probation officer of any change in the offender's address or employment;
>
> (8)     Submit to supervision by an appropriate agency or person, and report as directed by the court;
>
> (9)     Satisfy any other conditions reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty, or incompatible with the offender's freedom of conscience, or otherwise prohibited by this chapter; or
>
> (10)    Make appropriate and reasonable restitution to the victim or the family of the victim involved pursuant to § 40-35-304.

Tenn. Code Ann. § 40-35-303(d) (1997). In essence, a trial court may "impose any terms and conditions not inconsistent with the Tennessee Sentencing Reform Act." State v. Johnson, 980 S.W.2d 410, 413 (Tenn. Crim. App. 1998) (citing State v. Huff, 760 S.W.2d 633, 639 (Tenn. Crim. App. 1988)). However, the conditions of probation imposed by the trial court "must be reasonable and realistic and must not be so stringent as to be harsh, oppressive or palpably unjust." Stiller, 516 S.W.2d at 620.

Under the circumstances of this case, we cannot conclude that requiring the defendant to serve ninety days in a halfway house is an unduly harsh or oppressive condition of probation. The defendant has a lengthy juvenile criminal record, which includes numerous arrests for drug possession. He testified at the sentencing hearing that he had only a part-time job during the school year, that he was currently unemployed, and that his girlfriend worked two jobs to support the family.

He indicated that he spent his free time hanging out smoking marijuana with his friends, and trying to make "easy money" by selling crack cocaine. As the trial court observed, the defendant obviously has a pattern of engaging in self-destructive and irresponsible, not to mention criminal, behavior. As the trial court also observed, the defendant, although testifying that he believed he could "go straight," failed to offer any plans or goals for how he intended to change his life or behavior in the future. Full probation has failed to work with this defendant in the past. We, therefore, conclude that the trial court did not abuse its discretion by ordering the defendant to spend a ninety-day period in a halfway house as a condition of his probation.

The State has directed our attention to the fact that the record is not clear regarding to which offenses the defendant pled guilty. Although the defendant states in his brief that he pled guilty to all charges, only two judgment forms are included in the record. Indictment No. 99-13848 was a two-count indictment, charging the defendant in count one with unlawful possession of more than .5 grams of cocaine with the intent to sell, and in count two with the unlawful possession of more than 26 grams of cocaine with the intent to deliver. The judgment form which references Indictment No. 99-13848 reflects that the defendant was charged with unlawful possession of cocaine with the intent to sell or deliver and pled guilty to simple possession of cocaine. The form does not reflect, however, whether the defendant's guilty plea was negotiated with regards to count one or count two of the indictment. The transcript of the guilty plea hearing was not included in the record before this court, making it impossible for us to determine exactly to which offenses the defendant pled guilty. Accordingly, we remand this case to the trial court for entry of a corrected judgment form.

## CONCLUSION

After reviewing the record, we conclude that the trial court did not err in denying the defendant's request for judicial diversion, or in requiring that he spend ninety days in a halfway house as a condition of his probation. Accordingly, we affirm the judgment of the trial court. We remand the matter for entry of a corrected judgment form.

_____
ALAN E. GLENN, JUDGE

-8-